Jacob Kaufmann, Isaac Kaufmann, Morris Kaufmann and Henry Kaufmann *v.* John Rowan and Leontien Rowan, his wife, Appellant.

*Mortgage—Husband and wife—Coercion—Evidence.*

On a scire facias sur mortgage against a married woman where the defense was coercion by the husband, the defendant was called and asked what her husband had said to her the evening before and again the morning immediately before she went to the office where she signed the mortgage. The court sustained an objection that it was irrelevant without evidence of notice to the mortgagee before he took the mortgage, or offer to produce such evidence. *Held*, that the ruling was clearly right.

As against a mortgagee taking on the faith of a notary's certificate of acknowledgment, regular on its face, a married woman will not be heard to deny that the contents of a mortgage which she had executed were made known to her, where the notary who took her acknowledgment testified to

asking her if the contents were known to her, and if she signed of her own will and accord.

*Mortgage—Husband and wife—Suretyship—Extension of time.*

A wife who has given a mortgage to secure a debt of her husband will not, on the theory that she has been prejudiced as a surety, be relieved from the payment thereof by reason of an extension of time given to the husband, where it appears that under the agreement for extension a third person bound himself to make periodical payments which were to be applied on the debt secured by the mortgage, and, therefore, in relief of the surety, and the agreement to extend the time of maturity was conditioned on such payments being made, and that the mortgagees expressly stipulated that in no way should their rights for the enforcement of the mortgage be relinquished or prejudiced.

Argued Oct. 31, 1898. Appeal, No. 15, Oct. T., 1898, by Leontien Rowan, one of the defendants, from judgment of C. P. No. 1, Allegheny Co., Dec. T., 1895, No. 189, on verdict for plaintiffs. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Scire facias sur mortgage. Before STOWE, P. J.

At the trial it appeared that the main defense of Leontien Rowan was coercion by her husband in executing the mortgage

When Mrs. Rowan was on the stand, in her own behalf, she was asked this question by her counsel:

" Q. What did your husband say to you the evening before and the morning just immediately before you went to Mr. Kaufmann's office and signed this mortgage? "

Plaintiffs objected. as irrelevant and incompetent, and that it is no evidence to show that the Kaufmanns had notice of anything that was said or done by the husband to the wife, before they had taken this mortgage.

The objection was sustained and a bill sealed for defendants. [1]

A further defense was that an agreement to extend the mortgage if certain payments were anticipated, changed the time of payment and released the wife, although the payments were not made.

The facts appear by the opinion of the Supreme Court.

The court gave binding instructions for the plaintiffs. [2]

Verdict and judgment for plaintiffs for $15,189.67. Leontien Rowan, one of the defendants, appealed.

1899.]          Assignment of Errors—Opinion of the Court.

*Errors assigned* were (1) rulings on evidence, quoting the bill of exceptions; (2) in giving binding instructions for plaintiffs.

*James R. Macfarlane,* with him *Charles S. Crawford* and *Clarence Burleigh,* for appellant.—A purchaser, bona fide, and without notice of the fraud, is protected against fraud in the acknowledgment, but as to all other persons, parol evidence is admitted to show fraud or duress connected with the acknowledgment : Hecter v. Glasgow, 79 Pa. 79 ; Louden v. Blythe, 16 Pa. 532 ; McCandless v. Engle, 51 Pa. 309 ; Lewars v. Weaver, 121 Pa. 268.

In this case Mrs. Rowan admittedly objected to executing the paper with the water rent in it; the water rent was put in it; Kaufmann went out of the room while the notary took the acknowledgment, perfunctorily, and this, we contend, is not a sufficient inquiry : Fleming v. Ogden, 152 Pa. 419.

The question of the acknowledgment was for the jury.

It is immaterial whether Mrs. Rowan be called a surety, her property was in the position of suretyship, she was entitled to subrogation, and to all the equities of the position : Kuhn v. Ogilvie, 178 Pa. 303 ; Miner v. Graham, 24 Pa. 491 ; Lowry v. McKinney, 68 Pa. 294 ; Hill v. Witmer, 2 Phila. 72 ; United States v. Howell, 2 Am. Leading Cases, 458 ; Huntingdon v. Huntingdon, 2 Leading Cases in Equity, * 1010 ; Bensinger v. Wren, 100 Pa. 500 ; Robbins v. Robinson, 176 Pa. 341 ; Smith v. Townsend, 25 N. Y. 479 ; Gahn v. Niemcewicz, 11 Wend. 312 ; Hagey v. Hill, 75 Pa. 108 ; Oriental Financial Corporation v. Overend, Gurney & Co., L. R. 7 Chan. App. Cases, 142.

*M. A. Woodward,* with him *W. G. Guiler* and *Josiah Cohen,* for appellees, cited Barclay v. Deckerhoof, 151 Pa. 374 · Harnsberger v. Geiger, 3 Grattan (Va.), 144.

OPINION BY MR. JUSTICE MITCHELL, January 2, 1899 :

On the trial of the scire facias on the mortgage Mrs. Rowan, the appellant, was called and asked what her husband had said to her the evening and again the morning before she went to the office where she signed the mortgage. The court sustained an objection that it was irrelevant without evidence of notice to the mortgagee before he took the mortgage, and as there was

no such evidence, nor offer to produce it, the ruling was clearly right.

On the main ground of defense, coercion, the evidence wholly failed. The property of Mrs. Rowan was bound by a mortgage to Adler & Co. to secure a debt of her husband to them, and to indemnify them as sureties for certain rent due and to become due by the husband. This debt was becoming urgent, and an arrangement was made to pay it off and discharge it through the aid of a new mortgage to plaintiffs. The parties met to carry out this arrangement, there being present one of the plaintiffs with his counsel, and both the defendants with their counsel. A discussion ensued, lasting several hours, during which it is now alleged that Mrs. Rowan was coerced by her husband and Kaufmann into signing the mortgage. But as to this, as already said, the evidence wholly fails. The only evidence bearing even slightly on coercion by the husband is that once when his wife and Kaufmann had got into a very heated discussion over the water rent, and as she says Kaufmann began to swear, the husband leaned over the table and told her to hush and not to talk to Kaufmann. On cross-examination she was asked the direct question whether at that time she was afraid of her husband and her answer " don't you think I would be a child if I was afraid of him?" is the best commentary on the whole defense. It is not worth while to review the testimony. It shows that she knew all about the transaction and took an active and positive part in it; that she did object to including the water rent, and dickered stoutly for better terms, but finding Kaufmann firm yielded and signed the mortgage after it had been gone over and discussed item by item in the presence and with the advice of her counsel.

The appellant further claims that she was not informed of the contents of the paper by the notary who took her acknowledgment. In the face of the facts as to the previous discussion and the presence of her counsel at the time, this would be unworthy of any credit, but as the notary testified to asking her if the contents were known to her and if she signed of her own will and accord, the court was right in not submitting the matter to the jury: Oppenheimer v. Right, 106 Pa. 569; Lewars v. Weaver, 121 Pa. 268.

The last point urged by appellant is that her property was in

the position of surety for her husband's debt, and that by a subsequent agreement in writing plaintiffs extended the time for payment of the husband's debt, and thereby discharged her mortgage. But even conceding the validity of this point, an examination of the contract does not sustain it. Under the lease to Rowan he was bound to furnish good bail each January for the year beginning the following April. In January, 1895, one Friday became such bail for one half the rent for the ensuing year, and also for one half the payment of an additional sum of $500 each month for six months, to be applied on the debt secured by the bond and mortgage in suit. Upon such payments being made the plaintiffs agreed to extend the time of maturity of the mortgage for one year, but expressly stipulated that in no way should their rights for the enforcement of the mortgage be relinquished or prejudiced. This agreement was in plain relief of the surety. Any payments made under it would go to lessen the amount due on the mortgage, and the agreement to extend the time of maturity was conditional on such payments being made. None of them was made and the rights of the parties remained unchanged. A surety can only be held to the contract strictly as he entered into it, and many cases have enforced this principle with such attenuated astuteness as to give rise to the popular impression that becoming surety is a mere matter of form, involving no responsibility that cannot be wriggled out of. But there is a substantial principle as the basis of the rule, and cases like the present show that there may be excuses too flimsy even to exonerate a surety.

Judgment affirmed.